UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHNNY CONNER JR.,

             Plaintiff,

v.

BRIAN RENDON and
BRIAN WHITSITT,

             Defendants.
_____/

Case No. 5:06-CV-204

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendants Brian Rendon and Brian Whitsitt's Motion for Summary Judgment. Plaintiff Johnny Conner Jr., through counsel, has opposed such Motion. Oral argument is unnecessary in light of the briefing. *See* W.D. Mich. L. Civ. R. 7.2(d).

**BACKGROUND**

This is a civil rights suit under 42 U.S.C. § 1983 alleging a violation of Plaintiff's Fourth and Fourteenth Amendment rights premised on an illegal police eviction. The factual background recounted below is interpreted in a light most favorable to Plaintiff.

What is disputed on this record is the status of Plaintiff's right of occupancy to a rental unit located at 1706 Maplewood, Apt. A, Lansing, Michigan on December 15, 2005. Although Plaintiff admits that he had not paid rent for a time and disputed utilities bills with the landlord (Dexter Mackey, Jr.), he maintains that he had not left the residence and had refused to vacate the residence. (Conner Dep. 20, 40-41.) Mackey's position was that Conner had vacated the premises and then illegally returned to smoke marijuana, which he smelled. (Dexter Mackey Jr. Decl. ¶ 5-6.) The

Court assumes in deciding the Motion that Plaintiff's version is true, that Plaintiff was still in possession of the premises and had not abandoned it as of December 15, 2005.

What is not disputed on this record is what the police were told by Mackey. Police were told that the tenant had abandoned the residence weeks ago and had returned unlawfully to smoke drugs. (Mackey Dep. ¶¶ 5-6.) This same message was repeated to the responding police officers over the police radio. (Radio Tr., Ex. 2, at 1.) The premises, it is not disputed, was cold and without utility service at that time. (Conner Dep. 42.)

In response to such call, Defendant Officer Brian Rendon arrived at the residence at 6:02 p.m. (Rendon Dep. 7-8.) He was met there by Mackey. (*Id.*) Officer Brian Whitsitt arrived a few minutes later and met Mackey and Rendon outside the apartment. (Rendon Dep. 11; Whitsitt Dep. 8-9, 15.) Mackey owned the building and resided in the upstairs apartment (Apt. B) above Apt. A. (Mackey Decl. ¶ 4.) During this time, Conner was inside the residence and observed the officers talking to Mackey. (Conner Dep. 45.) Mackey gave his permission to the officers to enter Apt. A; they received a key from Mackey to open the front door lock and instructions from him to break the fastened security chain. (Mackey Decl. ¶ 8.) Before the officers entered, they smelled a strong odor of marijuana. (Rendon Dep. 16; Whitsitt Dep. 30.) As police broke the security chain, Conner fled through a back door to the apartment. (Conner Dep. 48-49.) He then ran to his Uncle's house on another street. (*Id.* 52.) Mackey himself found two bags of marijuana, a marijuana pipe and two pots on the stove with residue of drug paraphernalia. (Mackey Decl. ¶ 13.)

Before entering the residence, Officer Brian Rendon announced that he was entering with a police dog. (Rendon Dep. 18-19.) A security check of the residence ensued and, in the process, Officers Rendon and Whitsitt were charged by a pit bull terrier owned by Conner. (Rendon Dep. 24-

2

25, 29.) Rendon then shot the pit bull twice, killing it. (*Id.*) After another period of time, the officers left Apt. A to deal with Conner's vehicle, which was left in the driveway and was blocking Mackey's vehicle's access to the street. (*Id.* 34-35.) In response to Mackey's request, Officer Whitsitt then wrote a parking ticket (duly attached to the vehicle) and a private towing company was called to tow the vehicle away. (Whitsitt Dep. 61-64.)

## SUMMARY JUDGMENT STANDARDS

Defendants' Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record

3

presented must be interpreted in a light most favorable to the non-movant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Notwithstanding, a genuine doubt as to material facts means something more substantial than a speculative or metaphysical doubt as to the material facts.  *Scott v. Harris*, 127 S. Ct. 1769, 1776 (U.S. 2007).

**LEGAL ANALYSIS**

Plaintiff alleges in his Complaint and argues in the briefing that Defendants' conduct in entering the apartment, shooting his dog and towing his car violated his Fourth Amendment rights against "unreasonable searches and seizures" and his Fourteenth Amendment rights against deprivation of property "without due process of law".  This argument is premised on the United States Supreme Court's decision in *Soldal v. Cook County*, 506 U.S. 56, 58 (1992) and the Sixth Circuit Court of Appeals' decision in *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).  Plaintiff likewise argues that these holdings "clearly established" his Fourth and Fourteenth Amendment rights against police-aided evictions without due process of law, such that the police conduct in question is not protected by qualified immunity.

What is immediately surprising about Plaintiff's Fourth and Fourteenth Amendment legal analysis is that it neglects the significant difference in circumstance between this case and the *Soldal* and *Thomas* cases.  In this instance, the officers were called to perform an emergency security check because they had received a report of two crimes–unlawful entry into an abandoned apartment and possession (and use) of marijuana.  The officers smelled the marijuana themselves before entry to the residence.  These facts were sufficient to justify an emergency entry to the residence without a warrant even assuming that Plaintiff had retained some possessory interest in the apartment.

4

The most pertinent case is the Sixth Circuit's recent decision in *United States v. Brown*, 449 F.3d 741, 741 (6th Cir. 2006). *Brown* affirmed the earlier authority, not affected by *Soldal* and *Thomas*, that officers retained authority to make an emergency protective sweep of premises when they had probable cause to believe a burglary was ongoing. This is the scenario which presented itself to the Defendant officers at the time they made a protective sweep of Plaintiff's residence. Mackey had supplied sufficient information to the officers to support probable cause of an unlawful entry. Further, the odor of marijuana supported an emergency search to prevent an ongoing breach of the peace. This analysis was previously applied by the Sixth Circuit in the case of *United States v. Rohrig*, 98 F.3d 1506, 1522 (6th Cir. 1996). *Rohrig* held that a police officer's warrantless entry into an apartment to abate a noise nuisance was permissible under the Fourth Amendment. In so deciding, the Sixth Circuit approved in *dicta* a California case which had approved a warrantless search to abate marijuana odors. *Id.* at 1519-20, citing *People v. Lanthier*, 488 P.2d 625 (Cal. 1971).

Such authorities, when read together, justify the warrantless entry to the apartment for the purposes of making a protective sweep to both prevent injury and theft of property and to abate nuisances such as ongoing drug activity. While Plaintiff may certainly challenge the statements made to officers by Mackey as untrue, for the purposes of the Fourth and Fourteenth Amendment analysis, the officers acted properly in determining at the time of Mackey's complaints that they had probable cause to believe that crimes and nuisances were ongoing in the apartment and that a warrantless protective search was justified. The destruction of Plaintiff's dog, which was unanticipated, then became justified by the officers' need to protect themselves during the protective search of the residence. Furthermore, the towing of the vehicle was justified under state and local law apart from whether the entry of the residence was legal. Namely, the ticketing and towing of the

5

vehicle was permitted by local ordinance which authorized officers to ticket a vehicle blocking a private drive. *See* Codified Ordinances of Lansing, Michigan § 2.5d(1)(g). Neither the Fourth or the Fourteenth Amendment permits one to prevent access to private or public roadways.

Finally, apart from the substantive analysis of the merits of Fourth and Fourteenth Amendment case law, Defendants are proper in invoking the protection of qualified immunity. Qualified immunity is intended to protect from liability officers whose actions are not objectively unreasonable in light of clearly established constitutional rights. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (setting forth three-part qualified immunity test). In the context of this case, Plaintiff's rights against a protective sweep were not clearly established by the case law cited by Plaintiff's counsel given the facts which presented themselves to officers on December 15, 2005. This is true in part because of the holdings in *Brown* and *Rohrig*. It is also true because both *Soldal* and *Thomas* were decided under different factual contexts and did not intend relief in the present context.

Likewise, the manner in which the police approached this entry and search (a protective sweep) was approved in such cases as *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 995 (6th Cir. 1994) and *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980) as a means of protecting the public's peace and order. Similarly, the Sixth Circuit in *Flatford v. City of Monroe*, 17 F.3d 162, 170-71 (1994) said that officers who had reasonably relied on a building inspector's judgment as to the dangerousness of a building would be entitled to qualified immunity. Such case law provides police officers with a fair degree of latitude in responding to emergencies and nuisances. Given this latitude, Defendants are entitled to qualified immunity for their conduct in reasonably entering the premises to protect public safety and prevent nuisance.

## **CONCLUSION**

For the reasons given herein, a Judgment shall enter granting Defendants' Motion for Summary Judgment and dismissing this suit with prejudice.

                                    /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:             RICHARD ALAN ENSLEN
       August 20, 2007              SENIOR UNITED STATES DISTRICT JUDGE